IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 14, 2004

**DAMIEN LAMAR OWES v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 99-C-1934     Steve Dozier, Judge**

**No. M2002-03020-CCA-R3-PC - Filed May 3, 2004**

The petitioner, Damien Lamar Owes, was found guilty by a Davidson County jury and stands convicted of especially aggravated robbery, aggravated burglary, and five counts of especially aggravated kidnapping. He is serving a 30-year sentence. Aggrieved by his convictions, the petitioner pursued a *pro se* action for post-conviction relief predicated on the alleged ineffective assistance of trial and appellate counsel. Following the appointment of counsel and a hearing, the petition was denied. The petitioner appeals and urges that he is entitled to relief. We disagree and affirm the dismissal of the petition.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOHN EVERETT WILLIAMS, JJ., joined.

James P. McNamara, Nashville, Tennessee (on appeal); and Monte D. Watkins, Nashville, Tennessee (on appeal), for the Appellant, Damien Lamar Owes.

Paul G. Summers, Attorney General & Reporter; Kim R. Helper, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Derrick L. Scretchen, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The facts underlying the petitioner's convictions are gleaned from the court's opinion on direct appeal.

> In the early morning hours of November 12, 1998, four masked men broke into the north Nashville two-bedroom home of Betty Jean Mitchell. Ms. Mitchell and her boyfriend, Michael Pritchard, were asleep in one bedroom, and Ms. Mitchell's two sons, eighteen-year-old Mario Mitchell and thirteen-year-old Geno Smith,

were asleep in the second bedroom, when men shouting "Police! Police!" kicked in the front door of their home on Vance Avenue.

The armed, masked men who entered the house were not the police. They bound Ms. Mitchell, Michael Pritchard, and Geno Smith with duct tape, and shot Mario Mitchell twice in the leg, demanding that he tell them where the money and guns were hidden. Ransacking the house, the men found and took approximately $800 in cash and a nine-millimeter gun belonging to Mario. When they threatened to kill him if he did not tell them where the rest of the money was hidden, Mario lied, telling them that his cousin was staying at Mario's former residence, a house on 12th Avenue, and that they would find his money there. Instead of leaving him behind, the men dragged Mario into the hallway, where they shot him again in the leg. They then carried him outside to his sport utility vehicle, put him inside, and drove him to his former residence.

At the house on 12th Avenue, the men took Mario to the back porch and ordered him to yell for his cousin. When the man and woman who were in the apartment came out, the men forced either one or both of them back inside at gunpoint, ransacked the apartment, and demanded money. Before taking flight, one of the men shot Mario once more, grazing his chest with a bullet. While still in the emergency room, Mario told police that he had recognized three of the men as acquaintances from his neighborhood. Approximately one week later, he identified [three of the assailants, including the petitioner] from a series of photographic lineups.

*State v. Damian Lamar Owes*, No. M2000-00477-CCA-R3-CD, slip op. at 2-6 (Tenn. Crim. App., Nashville, June 1, 2001) (footnote omitted).

In connection with his pending bid for post-conviction relief, the petitioner alleged that trial and appellate counsel's services were constitutionally ineffective. More particularly, he claimed that trial counsel failed to properly investigate and prepare for trial; failed to properly advise about the possible punishment, if convicted; failed to properly relay a plea offer made by the state; failed to impeach Mario Mitchell; and failed to call April Faust as a witness. He claimed that appellate counsel failed to consult with him and failed to properly research and present meritorious issues on appeal. The petitioner also claimed entitlement to post-conviction relief based on erroneous jury instructions and faulty amendment of the indictment.

At a hearing on his claims, the petitioner testified that trial counsel consulted with him on approximately two occasions, but they never fully discussed his case. The petitioner claimed that the day before trial began, counsel discussed a plea offer with him. According to the petitioner, his

case was set for trial at that time without his knowledge. Up until the time of trial, the petitioner thought that counsel was "shooting for" release on probation.

The petitioner was asked about the plea offer, and he related that "the State had offered [him] fifteen years at 100 percent." In terms of the petitioner's reaction to the offer, his testimony was disjointed; we discern that he took the position that he would have accepted the offer but that he was unable to do so because his case was already set for trial. "Because I was already set for trial," he stated, "And, from -- from my -- from my understanding, it is that you cannot cop out for a plea offer, if you already set for trial, because the DA won't give -- the DA won't allow it."

The petitioner further testified that trial counsel did not interview any witnesses on his behalf and did not subpoena any witness, although the petitioner said that he had provided witness names to counsel. Moreover, the petitioner complained that counsel refused to cross-examine certain state witnesses. One specific complaint the petitioner made was that counsel failed to "impeach the perjury of Mario Mitchell," referring evidently to inconsistent statements that Mitchell had made.

The petitioner said that to his knowledge trial counsel did not prepare for trial. One of the things that the petitioner wanted trial counsel to do was call April Faust as a witness, but counsel did not do so. She had been listed as a witness for the state, but the prosecution could not locate her. The petitioner believed that his counsel could have located her. According to the petitioner, counsel also failed to call Teresa Crenshaw as an alibi witness; the petitioner claimed that she would have testified that the petitioner was asleep at her house all day on November 12.

The petitioner was asked about the services of his appellate counsel, and the petitioner testified that appellate counsel's heavy caseload prevented him from properly preparing the appeal. The petitioner met with appellate counsel on one occasion. The petitioner said that appellate counsel did not raise all of the issues that the petitioner wanted addressed, but the petitioner was unable to name the omitted issues.

Trial counsel testified at the post-conviction hearing, and his testimony, not surprisingly, contradicted the petitioner's claims. Counsel had been appointed to represent the petitioner, and according to counsel's notes he met with the petitioner on approximately thirteen occasions, either in court or where the petitioner was being held.

Regarding plea offers, counsel testified that the state offered fifteen years at one hundred percent. Counsel said that the petitioner "flatly declined that offer." The offer was communicated on multiple occasions; each time the petitioner refused because the petitioner did not believe that the state's primary witness, Mario Mitchell, could identify him as one of the masked assailants. Counsel added that Mitchell had been unable, when he testified at the preliminary hearing, to identify the petitioner. Mitchell's testimony, however, changed at trial.

Counsel affirmed that he received discovery from the state in a timely fashion and that he supplied the petitioner with a copy of that discovery. Counsel said that he discussed with the

petitioner the strengths and weaknesses of the state's case numerous times. Regarding defense witnesses, counsel produced a letter that the petitioner had written requesting that counsel subpoena the petitioner's girlfriend, Laketa Summers, to be an alibi witness. Counsel explained that after he discussed with the petitioner how the girlfriend could be cross-examined about any prior criminal record, the petitioner decided that he did not want her to be subpoenaed. Furthermore, based on consultations with the co-defendants and their attorneys, counsel related that everyone agreed that it was best not to call any alibi witnesses. Counsel was not familiar with a person named Teresa Crenshaw.

Counsel denied not properly advising the petitioner about the plea offer. Counsel said that to the best of his recollection, the offer was presented as an "all-or-nothing package" for all of the defendants, and it appeared to counsel that one of the co-defendants was influencing the petitioner not to accept the offer. In terms of advising the petitioner about his potential sentence, if convicted, counsel identified from his file photocopies of the statutory offenses with which the petitioner was charged and notes reflecting when he covered each charge and its corresponding penalty with the petitioner.

Counsel also disputed the petitioner's claim that he did not impeach Mitchell. Counsel maintained he and the other two defense attorneys thoroughly cross-examined Mitchell and highlighted inconsistences among the various statements and testimony he had given. Regarding April Faust, counsel testified that she and several other women were listed on the indictment as witnesses. Counsel was unable to locate the women, even after he requested and received from the state updated addresses and phone numbers for the women. Counsel said that the petitioner advised him that "the word on the street" was that the women would not appear and testify against him.

Counsel characterized the petitioner's decision to go to trial as "incredible." Counsel testified that he "ethically thought that [the petitioner] should take the fifteen years at a hundred percent, and that we were not gonna be able to call any alibi witnesses." Counsel said that he so advised the petitioner.

The petitioner's appointed appellate counsel also testified at the hearing. He explained how he prepared the petitioner's appeal. He said that when he is involved in the appeal of a case that he did not try, he consults with the client for input and possible issues. Appellate counsel's practice is to include any issues suggested by the client for which counsel can find a legal basis.

Regarding the petitioner's appeal, appellate counsel recalled meeting with the petitioner in person and having telephone discussions. Counsel did not specifically recall what, if any, issues that the petitioner may have raised with him. Counsel, however, was certain if the petitioner had suggested an issue, counsel would have included it in the brief if a legal basis existed to support the issue.

The post-conviction court took the matter under advisement and later issued a written order denying post-conviction relief. The court regarded the testimony of trial and appellate counsel

-4-

as credible and found that the petitioner had failed to establish both deficient performance and prejudice, which are required to prevail on an ineffective assistance of counsel claim. The court further found that two of the claims involving the reasonable doubt jury instruction and the amendment of the indictment had been waived for failure to raise them in earlier proceedings.

On appeal, the petitioner has restricted the issues to trial counsel's effectiveness in terms of investigating his case prior to trial and communicating the state's plea bargain offer in a timely fashion.

In a post-conviction proceeding, the petitioner bears the burden of proving the grounds raised by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2003). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, a claim of ineffective assistance of counsel presents a mixed question of law and fact subject to *de novo* review. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). As such, the post-conviction court's findings of fact are entitled to a presumption of correctness unless the evidence preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). The credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the post-conviction court and, on appeal, the burden is on the petitioner to prove that the evidence preponderates against the post-conviction court's findings. *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997). However, a post-conviction court's conclusions of law, such as whether counsel's performance was deficient or whether that deficiency was prejudicial, are subject to a purely *de novo* review with no presumption of correctness. *Fields*, 40 S.W.3d at 458.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. Moreover, "a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad*, 938 S.W.2d at 370 (citing *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069).

The petitioner first submits that trial counsel was ineffective for not interviewing the potential alibi witness Teresa Crenshaw. This complaint fails, in the first instance, because the petitioner never offered the testimony of Ms. Crenshaw at the post-conviction hearing. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) ("[W]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should

be presented by the petitioner at the evidentiary hearing"; otherwise, the petitioner is not entitled to relief.).

Furthermore, in response to questioning from the court, trial counsel testified that the petitioner had given a statement to the police claiming that he had been at Crenshaw's apartment on November 12, 1998, from approximately 5:30 p.m. The break-in and robbery occurred during the early morning hours of November 12, between 2:00 and 4:00 a.m. The differing times frames would not have supplied the petitioner with an alibi for the offenses; therefore, no prejudice has been established.

In his second issue, the petitioner insists that trial counsel failed to timely convey the state's offer to plead to a fifteen-year sentence. The petitioner acknowledges that the post-conviction court credited trial counsel's testimony that he conveyed the state's offer to the petitioner on multiple occasions but that the petitioner "flatly declined" the offer. Nonetheless, the petitioner argues in conclusory fashion that the evidence preponderates against the court's credibility determination. We disagree. Credibility issues fall within the sound discretion of the lower court, and we discern no reason to disturb that determination in this case. *See Henley*, 960 S.W.2d at 579 (credibility of witnesses and weight and value to be afforded their testimony are questions to be resolved by the post-conviction court).

Based upon the foregoing, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE